Mayer. It's my pleasure this afternoon to move the admission of one of my law perks, Teresa Summers. Teresa has served with distinction in my chambers for the past year and a half. She's done outstanding work. I'm very proud of the contribution she's made to the court and to my chambers. She's a magna cum laude Order of the Coit graduate of my alma mater, Georgetown. And to complete the formalities, I move the admission of Teresa Marie Summers, who is a member of the bar in good standing of the highest courts of the District of Columbia and Virginia. I have knowledge of her credentials and I'm satisfied that she possesses the necessary qualifications. Thank you. Your motion will be granted. Judge Lynn Summers, would you please raise the clerk and raise your right hand? And I would like to add the congratulations and the welcome of my colleagues in the court. We hope to see you here with regularity at social functions only. Our first case this morning is 06-3263 Pittman v. The Department of Justice. Mr. Fruntz. May it please the court. My name is John Fruntz and I'm here to represent the petitioner, Gary P. Pittman. This is a case stemming from the Uniformed Services Employment and Reemployment Rights Act, commonly known as USERRA, which provides a broad statutory scheme to minimize the effects of military service on our veterans. Principally, Mr. Pittman's appeal involves statutory construction issues and interpretation, which as this court knows is entitled to date of a review. The Supreme Court and legislative history have indicated that USERRA is to be construed as liberally as possible in favor of the veteran. And the statute itself states that federal government is to be a model employer. Can I ask just a preliminary question about the collective bargaining agreement? I believe that your client was subject to a collective bargaining agreement. Yes. Did that agreement prohibit arbitration of a USERRA complaint? It did not speak to it. In fact, the agreement itself may have actually preceded USERRA and made no mention of USERRA. So there's nothing in the agreement that would prohibit adjudication of the USERRA complaint in front of the arbitrator? It does not address it as far as I'm aware. I really don't know and I don't think the whole agreement is a part of the record. I know. I didn't see any of it. So if your client had chosen not to bifurcate, not to come to the MSPB, then presumably your client could have had his USERRA claim adjudicated in the arbitration proceedings? I don't know that an arbitrator in a labor action would be able to properly adjudicate that kind of claim. And certainly he did not waive any claim by bringing the grievance procedure, which is owned by the union, rather than owned by the grievance. I don't want to take a lot of time in oral argument, but I have a question in my own mind about whether the board properly had jurisdiction because under 7121 when your client grieved at least a piece of the case, then that bars any jurisdiction in the board. And it struck me that the arbitrator would have had authority, I believe, under our precedent to adjudicate the USERRA claim. Well that would have only, the case law that only relates to a waiver of a claim under 5 U.S.C. Chapter 75, and there's nothing in USERRA which would indicate such a waiver. And in fact USERRA does not commit a diminishment of his rights. And since that waiver would have been done by the union rather than by the petitioner himself, and in fact in this instance the Justice Department has conceded that the union did in fact withdraw that grievance, and it was never heard because he had no control over it. Once the union withdrew it, once in terms of 7121 for purposes of deciding which of the two fora your client has selected, it's the filing of the grievance that triggers the absence of any future action at the board. Well the board definitely concluded that there was no such waiver, and the Justice Department has not filed an appeal. Well I understand that, but I mean we have to satisfy ourselves that we have jurisdiction. In order to do that we have to satisfy ourselves that the board had jurisdiction. I think the board correctly determined that it did have jurisdiction and that there was no such waiver. There was motion practice below, which is not part of the record, which related to that, and after that adjudication, which has not been contested at any point by justice, I don't think that at this point it would be proper. Well I would disagree. I don't use your alignment time, but I mean it's proper for this court to assess a jurisdictional issue sui sponte at any time in the proceeding. Okay. Now I'm turning now to the USERRA claim itself. No matter how you slice it, USERRA did not permit Mr. Pittman's termination by justice after his honorable service in Iraq. I'd like to directly address the issue of service fit and misconduct, which is addressed by section 4304 of the act, which is entitled character of service. Congress directly addressed the issue of possible misconduct in the service and directly limited what an employer can consider in such circumstances. It affords full USERRA protection unless that person has received a dishonorable or bad discharge, bad conduct discharge. If he was honorably discharged after a court martial conviction, the military has made its own determination after that court martial conviction, and they're in the best position to make that determination since they are the ones. Was it an honorable discharge? Oh yes, it was an honorable discharge, and in fact DD-214 in here? Yes, it's in there. Where is it? I looked and didn't see it, which means I'm not a very good looker. It's not a general discharge under honorable conditions. It's an honorable discharge, right? It was an honorable discharge, yes, and in fact he continued to serve in the Marine Corps Reserves after the fact. So the Marine Corps did not deem the conduct that he was engaged in sufficient to warrant a dishonorable or anything less than an honorable discharge. That should have been the end of the story. That's what section 4304 of the act indicates. That's all that an employer can look to. Now our position is directly supported by the language of the statute itself and the Department of Labor's preamble to its regulations, which specifically state who determines character of service, and the answer is the department of the service that you are serving under. Further, the regulations indicate that the only document an employer can ask a returning serviceman for is documentation relating to his separation from service. It really is regardless of how heinous the conduct is, so long as the military decides not to give you a dishonorable discharge. Yes, that's basically what the statutory scheme provides. So even if it were a situation of somebody who had been a school teacher or something while and molested the children in the school room in Iraq, but the military decided that didn't bother them, the person can come back and become a great school teacher and for a year can't be fired for college. Well, Congress has made that policy determination. It's not inconceivable, and I'm sure Congress has considered the possibility of bad conduct or whatever you want to characterize it in the military service, and this is how they thought. It doesn't strike you as sort of odd that it would work out so that a public school would have to keep a teacher for a year teaching, couldn't fire them for cause, even though that hypothetical I gave you is pretty gruesome. Well, I think it's unlikely that that circumstance would arise. How do we know whether the military would or would not have found that upsetting enough to them to give a dishonorable discharge? Well, the military, I mean, Congress spoke to the issue. They said, what can an employer consider, and it made it very crystal clear that they can consider the character of their military service, and if it's honorable, they want it to simplify it, make it easy on their veterans coming back from the military service to get their jobs back. If we get into all the factual issues of what we This comes out of your argument that if you're going to fire for cause, it has to be cause something that arises after you've come back to work, right? Yes. What happens if the bad conduct is between the military service and coming back to work? Well, I think that that's somewhat distinguishable, because then that would not come in under the 4304 purview, and I think that may be somewhat of a distinguishable case from this one. Like, for example, the hypothetical I thought of would be if someone were working, they did some things at work that nobody was aware of that was improper. They went and they served and they came back, and while they were gone, someone had to go in their desk and they saw something that was improper in there or what happened. That would be completely distinguishable because it has nothing to do with their service. What happens if the military doesn't discover the misconduct until after the honorable discharge has been granted? Take my child molestation event, and the military didn't realize that was happening in the school over in Iraq until it was too late. The person got an honorable discharge, they came back, they got their job at PS-12 in New York, and they're teaching grade school away, and all of a sudden it comes to light that this unfortunate conduct had been engaged in while in service. I would agree with you that that would be a distinguished situation from the case I bar, since in this instance there was a court-martial, the military was fully aware. So you would agree that in that instance the conduct in the service could be used for cause? I think that an argument could be made, certainly, that that would be the case, but that's not the situation. What's the difference between that and this case except for the fact in this case the military did understand what the nature of the problem was before the discharge? It's not that they just understood it a little bit. I mean, they had a trial, they had a court-martial, they knew the evidence, they knew the context of what happened. In this instance, the Justice Department had no facts other than what's in the court-martial summary. That's a different issue. I understand your argument on that point, which is you believe that cause can't be shown simply on the basis of the conviction. Yes. Because in the record, according to the employer here, cause would exist for a $10 loitering ticket conviction. The only exception is for a motor vehicle, right, of $150. But that's a different issue than your other issue, which is you're saying that the conduct in the military can't be used as cause. Cause is limited to what happens after you come back to work. And it certainly can't relate to—the way I phrase it is it cannot relate to the pre-reemployment military service is the way I relate it. That's the way I phrase it, and that's what I think the statute is the best way to interpret the statute. It cannot relate back to the pre-reemployment military service. Otherwise, it would obviate the character of service provision, in my opinion. But I'd like to reserve the balance of my time, if I may, for rebuttal. All right. Bownack? Is that correct? Bownack? Yes, sir. May it please the court. Can I ask you the same question about why couldn't the arbitrator have arbitrated the USERRA claim? Actually, he could have, Your Honor. He could? And in fact, that is exactly the argument that was raised by agency counsel before the earlier, before the arbitrator, that both parts of this should be brought before the arbitrator. But apparently, Mr. Pittman decided that he would bring a USERRA claim to the board and wanted the arbitrator to decide the just and sufficient cause only from that— But if that's the case, then once Mr. Pittman pitched his case to the arbitrator, which he did before he brought his second piece of the case to the MSPB, why wasn't the second piece of the case of the MSPB barred by 7121? I believe the way—actually, the agency argued that, and if that was— I'm just asking you as a matter of taking. I mean, my understanding was that his union filed the grievance at time A, and he was grieving his removal, correct? Yes, Your Honor. And his complaint about the removal was that the removal was illegal because it had violated his USERRA rights. His claim before the arbitrator was that there was not a just and sufficient cause to remove him from his employment with the Metropolitan Detention Center. That's my understanding of that argument. That has to subsume the no—there was no entitlement under USERRA. But my point is— Why would that be subsumed? I'm not saying that it's subsumed. Judge Clevenger is suggesting it's subsumed. I'm not that familiar with the argument before the arbitrator, Your Honor. I do understand that USERRA can be brought before the board, and there is jurisdiction if one can show that. That is the claim, that Mr. Pittman brought before the board, that he was terminated in violation of USERRA. That the agency— And he did not bring a specific USERRA claim to the arbitrator? No, Your Honor. My understanding of that proceeding was that he only brought the termination—or a claim before the arbitrator with a just and sufficient cause argument— A cause which had nothing to do with USERRA. Yes, Your Honor. That's my understanding. Substantial evidence supports the board's determination that Mr. Pittman failed to demonstrate that the Bureau of Prisons had removed him from his position as a correctional officer because of his military service. In making a USERRA claim, a claimant must show by a preponderance of the evidence that the military service was a substantial and motivating factor in the adverse personnel action. And once they have done that and met the burden, then the employing agency must show that it would have taken the same adverse personnel action in any event for a legitimate reason. Here, clearly, Mr. Pittman is a member of the protected class, the military class. But the basis upon which he was terminated is not because of his military service per se. It's because of his off-duty misconduct and his conviction for this off-duty misconduct during his military service. Article 92 specifications stated that Mr. Pittman was derelict in the performance of his duties by failing to safeguard the physical health, welfare, and treatment of Iraqi prisoners. Article number 128, which is the second spec, stated that Mr. Pittman did unlawfully strike at unknown Iraqi prisoners. Although Mr. Pittman... When you say off-duty conduct, that usually means personal misconduct. No, Your Honor. It means off-duty misconduct. He was on duty, was he not? He was not on duty at the Metropolitan Detention Center. He was off-duty... But I'm talking about in Iraq. He was on duty in the military in Iraq, yes, Your Honor. But the charges that were brought by the agency were that he had committed off-duty misconduct, which was the abuse as described in the two articles by the Military Court of Justice. And he was convicted of that behavior, too. Mr. Pittman attempts to convince the court... What do you mean off-duty? He was on duty in the Army. Yes, Your Honor. He was on duty in the Army when what the Bureau of Prisons is doing is they have a charge called off-duty misconduct. It means... Oh, you mean off-duty of the assignment he had as a Metropolitan Detention Officer? That's right, Your Honor. He was off-duty. He was not on duty with the Metropolitan Detention Center. Well, that's just doing indirectly what they can't do directly. I don't understand, Your Honor. Well, if Sarah says that the Congress, if Congress says here is the only way you can decide to discharge someone or fail to rehire them, you can't go behind that and say, well, this is really an off-duty. This is really part of the job that he had because he was off this duty because he was on military duty. He was on military duty, Your Honor. He was off-duty. He was not serving in his position in any capacity at the Metropolitan Detention Center when he was in the military doing his duty. He was clearly off-duty. He was charged with off-duty misconduct because the conduct that he engaged in in Iraq was not as a function of his duties in the Metropolitan Detention Center. Therefore, it's off-duty from his position as a correctional officer. That's what they mean by off-duty misconduct, Your Honor. The reference to off-duty is not a reference to off-duty as an army... No, Your Honor. ...as a member of the army. No, Your Honor, it's not. When you're a Metropolitan Detention Center employee, you can be charged with off-duty misconduct. That was one of the charges that he had against him, off-duty misconduct and conviction for that misconduct. But doesn't that mean if you're at home and you beat your wife and get arrested and convicted for assault? It could mean that, Your Honor. This is official federal government duty. He was on duty. Yes, Your Honor, he was on official federal government duty, but the activities he was engaging in, the ones that he was convicted of, namely unlawfully striking unknown Iraqi prisoners, was not part of the duty that the United States government, where I as a taxpayer, charged him with over in Iraq. That was something that he did that was not part of his activities in the military, his sanctioned activities. If it had been sanctioned, then why did the Military Court of Justice convict him for this behavior? That's what they mean by off-duty misconduct. It's illegal activity. And on page 21 of our appendix, we point out the statement- But what does the statute say? We're talking about what the statute says. Of course it was not good for him to do that, and he was punished for it. But doesn't the statute say that it's the government, it's the Army's characterization of his service that is the beginning and the end of the inquiry? The characterization of... There are several points, Your Honor, that this brings to mind. The characterization of service argument that Mr. Pittman raises goes back to whether or not he was re-employed by the agency. And we argue that, of course, he was re-employed by the agency on September 4th, and remained employed by the agency until December 22nd, when he was terminated from his employment. The argument I think you're getting to is whether or not the agency had a legitimate reason for removing him from his position, and the answer is yes, they did. Cause is not defined in USERRA, as used in Section 4316, which does state a person who is re-employed under this chapter shall not be discharged from such employment except for cause within one year, etc., etc. Cause itself is not defined. But looking at the legislative history, the legislative history, and I quote, states, if an employee is involuntarily removed from employment within the statutorily protected periods, as Mr. Pittman was, the committee intends that the employer bear the burden of establishing the existence of just cause. What does just cause mean? The legislative history goes on to say, just cause has been defined by the leading case on the question, which is called Kesserich v. Carnegie Illinois Steel Corporation, a 1947 Seventh Circuit case, and they defined it as cause for discharge upon which a fair-minded individual might act. Obviously involuntary removal with cause must be based on reasons other than a desire to avoid the provisions of Chapter 43, and here that's exactly what happened. He was removed for cause, as the board correctly found. He had this would be considered off-duty misconduct. He had also, the warden considered this behavior serious because it was a conviction in a military court. His behavior had a direct correlation between- But the military made a determination that his service overall was honorable, and the warden himself has made the similar determinations of people who did the very same thing, perhaps more egregiously, in the Metropolitan Prison. Now why does he second the Army but not himself? He's not second-guessing the Army, Your Honor, and I don't know- After Congress has said it, I mean, of course he could if Congress hadn't said it, but why can he do that when Congress has said the character of service that the military service determines is final? Yeah, we're not challenging his character of service. We're not challenging the fact that he was honorably discharged. I believe the statute is 10 U.S.C. 1161, which talks about the conditions under which someone can be dismissed from military service, but I believe that's correct, Your Honor, and it would talk about situations that his conviction didn't rise to that level, so yes- What would happen if we were to interpret the statute to say that the cause that you're referring to can't be anything other than incorrect behavior that occurs after he comes back to work? That wouldn't be a reasonable interpretation- Well, I was going to say, if we were to interpret it that way, Your Honor, we would take issue with that interpretation. It would be incorrect in this instance. It would be consistent, would it not, with the notion that the military makes the call as to whether or not the employer gets usury rights? It might be- Yes and no, Your Honor, because I believe, when reading legislative history, that the history really intended that people they're talking about in the military are serving honorably for our country and that they're not engaged in criminal activities and get convicted for such activities while they're serving for our country and that they're honorably discharged and that they come back to work and for some reason it has no relationship to anything. They're not rehired. For example, they were serving in the military and the people who wanted to rehire them just decided they didn't like people in the military because they didn't like war or something like that. Let me ask you another question. If, presumably in connection with the 12 officials who were working in the metropolitan prison who were accused of physical abuse of inmates, before any punishment was meted out to them, according to the record we have here, A, page 128, that in order to determine the severity of the penalty for physical abuse of an inmate, the circumstances of the evidence, circumstances of the incident should be given more consideration than the presence or absence of physical injury, right? It's a page, look at page 120. That's for physical abuse of inmates. Mr. Pittman was not accused of that. That was not a charge that the Metropolitan Detention Center brought against him. What was the nature of his offense in Iraq? The nature of his offense, yes, was unlawfully striking unknown Iraqi inmates in their election in the performance of duty. But the gravamen was he hit somebody, he physically abused an inmate, right? Yeah, that's one of the charges that were brought against him, yes, but he was charged by the agency with that conduct, but conviction of that conduct. Your honor, Mr. Pittman is going to serve on the line with inmates in a prison setting. He has to have the respect of the inmates, not the trust, but the respect. So are the ten remaining people in the metropolitan prison who kept their job? Now, presumably, each of them, before the punishment was meted out, and it varied from degrees of suspension to firing, right? As I read this nature of the offense and explanation, if you had, if you've worked in New York, the circumstances of the incident would have been considered by the deciding official. If you're talking about something that's on the job, yeah, anything that has to do with it. Why would you be, why would you insist on looking at the circumstances of the incident when it's on job and you would ignore it if it's off the job? He was convicted of the offenses, your honor. The people that were accused of the 9-11 detaining abuse were not convicted of anything. Neither the Civil Rights Division nor the Eastern District of New York, the U.S. Attorney's Office, they declined to prosecute. They never prosecuted the people Well, there's no question that they didn't. Conviction, what's the, he had the conviction. You said he could have been punished with bad conduct or a disarmable discharge. It was a general court martial. He could have been given a disarmable discharge. They did not see, believe that for some reason, the record isn't complete, they didn't really believe that he should be discharged, they didn't believe he should be reduced below the lowest grade, and they didn't, and they allowed him to be made on active duty. They made a judgment, and that is what Congress said we should honor. And your honor, we understand that, and Warden Zank understood that quite well. In fact, they very carefully tried to determine how would they work with this, because if they could have figured out a way that he could stay, they probably would have done that. However, here, because of his conviction, because of the nature of the behavior in which he engaged, Warden Zank... Well, you don't know the nature. The Warden Zank was concerned about... We don't know the nature of what he did, right? We do know the nature. You know of conviction, you know of conviction of striking. That's all you know. We know that they are not attempts, but these actions were actually carried out. He struck one, and he also failed properly supervised, untrained people over there. We know that the status of the people... Which is not necessarily his responsibility. We know that the status of the people he assaulted were prisoners. We know that he was convicted of striking more than one person. But he could have struck them, your witness was asked if he could have. What did Mr. Pittman strike these people who were in Iraq with? I don't know. Could it have been a pillow? I don't know what it was. Perhaps, Your Honor, but the Court of Military Justice determined that it was an offense that could be convicted, and if perhaps he was a pillow, maybe they wouldn't have convicted him. But that's not an issue here. He was charged with not only the nature of the offenses, but the conviction that he received in the Uniform Court of Military Justice. There's a direct relationship between the significance of his actions in relation to what he does in the correctional office. If an on-duty officer in a metropolitan prison got a misdemeanor conviction, $10 fine for a lawyer, would he be punished? Would you look behind that? Would you examine the circumstances of that? My understanding is they would look at the conviction, and they would deal with it accordingly. What do you mean accordingly? Because according to the record here, your witnesses testified, we don't look behind a conviction. A conviction is a conviction is a conviction. That's what you said. But there's such a direct relationship between the nature of what he did in Iraq and his responsibilities and the job in the Metropolitan Detention Center that it provides adequate cause, just cause, for his termination. For the reasons set forth in our brief and for the record. Why was he so adamantly against learning what had happened in Iraq? Why did he keep saying, I don't want to know. I don't need to know. Well, Your Honor, he believed that he had enough information because the way the Bureau of Prisons would work, if there's a conviction, they would consider the conviction, and that's what there was. The nature of behavior was articulated in the two specifications for which he was convicted. That was enough information for the warden in terms of what Mr. Pittman would be doing when he came back to the Metropolitan Detention Center. You would have thought that a thoughtful warden would have liked to know that this man, who was the only trained person on site in Iraq, was required to supervise soldiers in this context who had never been trained for what they were doing. He didn't properly supervise. They were not trained, they were thrown into this thing because of the inadequacy of the preparation. Okay, and so therefore one could conclude from that that Mr. Pittman, in being a trained law enforcement officer, should have acted differentially on my time, Your Honor. You're excused, thank you. But don't you worry about your time, let us worry about it next time. Next time pay attention to answering the questions and not racing through your argument. For the reasons set forth in our brief and argued here today, we respectfully request that the Court affirm the decision of the Board of the Law. Your Honor, I'd like to address what was just being discussed a moment ago. The Department of Justice witnesses who testified in this case clearly all indicated that there was no information as to the severity of the conduct Mr. Pittman engaged in. I'd like to read a quote from Mr. Scott Dodgeville, the warden's supervisor. He's a Northeast Regional Director of the Bureau of Prisons. So in reading this document, referring to the court martial summary, there is no way to tell how severe either one of these convictions were. Correct? His answer was correct. Further, Justice' own brief states that Margaret Connors, who's a Personnel Director for the Northeast Region dealing with employee disciplinary issues, testified that there have been circumstances in which improper physical conduct with an inmate has not led to removal. Mr. Pittman has multiple mitigating issues in his favor, including the context in Iraq. I discussed in the brief some of the horrible conditions that they were operating under. They had no doors between where they were living and where the inmates were living. They had no handcuffs, no shackles, no door locks, no metal detectors. Pretty much all they had were rubber gloves, and that was about it, and concertina wire. I'd further like to address the issue of discrimination. In my brief, I referenced that it was a direct discrimination claim made here, even if we don't reach the other issues, since they obviously based their determination upon activities while Mr. Pittman was serving in Iraq. One of the basis for discrimination under 4311A is performance of service. The Department of Justice preamble to its regulations clearly states that it protects against discrimination based upon status as a military person, as well as their activities in the military. They don't dispute that this took place as a result. What exactly is your hook for victory here for your client? Is it that he was never reinstated, so you need to go back and reinstate him, and then you start the whole thing over again? That would get you back pay. Or is it that there wasn't cause because you're not allowed to use military conduct as cause? Well, like I said at the very beginning of my argument, there are many ways to slice this. I think many of these arguments, each one of these arguments would be sufficient to reinstate Mr. Pittman. I think that basic argument is that the cause cannot relate back to the military service. I also think that there is a direct discrimination claim here, since they clearly terminated him based upon his military service. How can you say clearly? How do we know that the reason for the termination was we're getting rid of you because you're an ex-soldier? Not because he was a soldier, not a status as a soldier, it's his activities while being a soldier. In his termination letter, it states that he was terminated for activities, quote, while performing as a guard in the military. And that segues back to your argument that the military is the one really that makes the fundamental decision as to whether you have to be reemployed, even onto the cause issue. I think that basically goes to the fact that it's a unified statutory scheme that we're dealing with so that one argument frequently will then... The point is, no matter how vicious and cruel and horrible the conduct may have been while in the military, so long as the military doesn't deem that conduct such to cause a dishonorable discharge, then full employment rights latch. That's your argument, isn't it? That is essentially my argument, taken to its most extreme. That would be the argument. I don't mean to do it. I'm not doing it for fun. I'm doing it because our job is to try to figure out what Congress really meant. I have a hard time myself believing that Congress meant pedophiles got to come back and work in schools for a year until maybe you could lay them off for downsizing. I certainly think it's unrealistic that if someone were convicted of that in the military, Fort Marshall, which was down here, I think it would be very But I do not. We do not have any control over what the military does. We do not. But Congress obviously contemplated this conduct, and this is how they thought was the clearest, easiest way to make sure our veterans are protected. Otherwise, every time you come back, you would have to justify that. I understand your argument, and I respect it. Thank you. All right. Thank you. Thank you for submitting.